FILED
2014 Jan-08  AM 09:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **ROBERT C. LISK,** | ) | |
| **INDIVIDUALLY AND ON** | ) | |
| **BEHALF OF A CLASS OF** | ) | |
| **SIMILARLY SITUATED** | ) | |
| **PERSONS,** | ) | Civil Action Number |
| | ) | **3:13-cv-01402-AKK** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **LUMBER ONE WOOD** | ) | |
| **PRESERVING, LLC,** | ) | |

Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Robert C. Lisk (Lisk) brings this action, individually and on behalf of a class of similarly situated persons, against Lumber One Wood Preserving, LLC (Lumber One) for alleged breach of express warranty and violation of the Alabama Deceptive Trade Practices Act (ADTPA), Ala. Code §§ 8-19-1 *et seq*. Doc. 1. Lisk alleges that Lumber One falsely represented that it manufactured and distributed lumber that it purportedly treated to resist decay. Lumber One moves to dismiss the complaint, doc. 11, and the motion is fully briefed, docs. 12, 18, and 20, and ripe for review. For the reasons stated more fully below, as related to the breach of

express warranty and ADTPA class claims, the motion is **GRANTED**.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations omitted) (internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Id*. (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. FACTUAL BACKGROUND

In July 2010, Lisk entered into a contract for $3,248.16 with Clean Cut Fence Company (Clean Cut), for the purchase and installation of a fence at his home. Doc. 1 at 2. The contract called for Clean Cut to use 300 feet of Micronized Copper Azole (MCA) pressure-treated lumber, and stated that "[a]ll fencing materials shall be warranted only through their respective manufacturers." *Id*. Clean Cut purchased the necessary lumber from Capitol Wholesale Fence Company (Capitol Wholesale), *id*., which had purchased it wholesale from Lumber One, *id.* at 6, and installed the fence on Lisk's property, *id.* at 2.

At the time relevant to this lawsuit, Lumber One's website, advertising, and product labeling stated that Lumber One treated its lumber with MCA technology licensed by Osmose, Inc. (Osmose). *Id*. at 3. According to Osmose, lumber treated with its MCA pressure treatment technology is approved for end-consumer uses

that include fence posts, docks, decking, joists, beams, sills, building poles, and permanent wood foundations. *Id.* Osmose also claims that lumber treated with its MCA pressure treatment technology is designed to remain free from rot, fungal decay, and termite attacks for a minimum of fifteen to thirty years following installation. *Id.*

Three years after he had the fence installed, Lisk hired an electrician to wire it for electricity. *Id.* During his inspection of the fence, the electrician observed that the fence posts were rotten and failing. *Id.* Lisk contacted Clean Cut, which made the same determination and informed Lisk that his only recourse was to replace the fence. *Id.* Clean Cut also informed Lisk that many other consumers had experienced problems caused by Lumber One's wood rotting prematurely, but that Lumber One refused to take responsibility for the defective lumber. *Id.*

**III. ANALYSIS**

Lisk alleges claims of breach of an express warranty and a violation of the ADTPA on behalf of himself and others similarly situated.

*A. Lisk's Express Warranty Claim*

Lumber One challenges Lisk's express warranty claim on three separate grounds, which the court will consider in turn.

1. <u>No written express warranty statement</u>.

4

Lumber One first challenges Lisk's express warranty claim by arguing that "Lisk's complaint does not adequately allege (and Lisk cannot prove) the existence of a specific written warranty statement from Lumber One to Lisk." Doc. 12 at 6. By looking for a direct agreement between Lisk and itself, Lumber One misconstrues Alabama law and Lisk's express warranty claim. Lisk does not argue that he made an agreement with Lumber One. Rather, he argues that Lumber One made an express warranty to Capitol Wholesale, and that he was an intended third-party beneficiary of the warranty. Doc. 1 at 6–7. More to the point, Alabama law does not require a "specific written warranty statement" in order for a seller to be bound by an express warranty. *See* Ala. Code. 7-2-313(1)(a) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."). In his complaint, Lisk alleges that "Lumber One's website, advertising, and product labeling represented that its treated lumber was pressure treated using MCA technology licensed by Osmose Inc." Doc. 1 at 3. That allegation is sufficient, at least at the pleading stage, to support a claim that Lumber One made an "affirmation of fact" that it was selling Osmose MCA pressure-treated lumber, or, alternatively, described its lumber as

such,[1] and that affirmation of fact or description became part of the basis of the bargain between Lumber One and Capitol Wholesale, namely that it led Capitol Wholesale to believe the lumber it purchased was Osmose MCA pressure-treated lumber. Such a conclusion is consistent with Alabama law. *See Gable v. Boles*, 718 So. 2d 68, 71 (Ala Civ. App. 1998) (finding that a seller's "statement that [a] boat had been winterized" was a statement of fact giving rise to an express warranty).

### 2. No privity.

Next, Lumber One argues that Lisk's express warranty claim fails because "Lisk, a remote buyer, does not allege and cannot demonstrate privity with Lumber One." Doc. 12 at 7. This argument also misses the mark. "In Alabama, a vertical nonprivity purchaser[2] who has suffered only direct or consequential economic loss cannot recover from a remote manufacturer under an *implied* warranty theory. However, privity rules have been applied less restrictively to express as opposed to implied warranties." *Harris Moran Seed Co., Inc. v.*

---

[1] *See* Ala. Code 7-2-313(1)(b) ("Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.").

[2] A vertical nonprivity purchaser "is a buyer within the distributive chain who did not buy directly from the defendant." *Harris Moran*, 949 So. 2d at 922 n. 3 (quoting Gary L. Monserud, *Blending the Law of Sales with the Common Law of Third Party Beneficiaries*, 39 Duq. L. Rev. 111, 113 n. 8 (2000).

*Phillips*, 949 So. 2d 916, 922 (Ala. Civ. App. 2006) (emphasis in original) (citations omitted) (internal quotation marks omitted). The drafters of the Alabama Code's provisions governing express warranties explicitly contemplated the possibility of an express warranty creating liability to a third party:

> Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that *warranties need not be confined . . . to the direct parties to such a contract*. . . . The provisions of Section 7-2-318[3] on third party beneficiaries expressly recognize this case law development within one particular area. Beyond that, *the matter is left to the case law* . . . .

Official Comment, Ala. Code § 7-2-313 (emphasis added). Consequently, the court must look to Alabama case law to determine whether Lisk's lack of privity with Lumber One bars him from making an express warranty claim.

The delineation of third parties' rights as they relate to express warranties is

---

[3] Ala. Code § 7-2-318 states that "[a] sellers' warranty, whether express or implied, extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." Lumber One cites § 7-2-318, doc. 12 at 7 n. 1, as support for its argument that privity requirements are only relaxed when a plaintiff alleges a products liability or personal injury claim, and not when, as in this case, a plaintiff alleges only economic loss. This argument is refuted by the Official Comment to Ala. Code § 7-2-313, which states that case law governs whether a third party may recover for the breach of an express warranty, and explains that § 7-2-318 is merely a recognition of case law that abolishes privity requirements when a plaintiff alleges personal injury; it does not exclude third-party express warranty actions in other contexts. Moreover, as explained *infra*, Alabama case law *does* allow for a third party beneficiary who alleges solely economic loss to recover for the breach of an express warranty. The theory is not, as Lumber One argues, limited to personal injury and products liability actions.

a thinly developed area in Alabama jurisprudence. The Alabama Supreme Court has indicated that a vertical nonprivity purchaser who suffered purely economic harm might be able to recover from a manufacturer under a breach-of-express-warranty theory, but has not directly addressed the issue. *See Bay Lines, Inc. v. Stoughton Trailers, Inc.*, 838 So. 2d 1013, 1018–19 (Ala. 2002) (refusing to allow a third party buyer to sue an original seller for breach of an express warranty because "a party claiming to be a third-party beneficiary of a contract must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party," and the third party buyer failed to make such a showing). The Alabama Court of Civil Appeals, however, squarely dealt with such a claim in *Harris Moran.* In that case, farmers sued a seed manufacturer for selling seeds that it claimed grew "Mountain Fresh" tomatoes, but actually grew another, inferior variety. *Harris Moran*, 949 So. 2d at 918. The plaintiffs did not purchase the seeds directly from the defendant. Rather, the defendant sold the seeds to an independent dealer, who sold them to a farm, that planted them and sold the resulting plants to the plaintiffs. *Id.* at 918–19. The plaintiff claimed that the contract between the defendant and the independent dealer contained a "true to type" express warranty, that it was an intended third party beneficiary to that contract, and that the defendant breached

8

the contract by selling seeds that did not grow Mountain Fresh tomatoes. *Id.* at 920. The court noted that "to recover under a third-party beneficiary theory, the complainant must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached." *Id.* (quoting *Sheetz, Aiken, & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.*, 512 So. 2d 99, 101–02 (Ala. 1987)). According to the court, the key inquiry was whether the defendant "intend[ed] to protect future customers of [the independent dealer] and other users when it warranted its products to [the independent dealer]." *Id.* at 923. The court concluded that substantial evidence indicated that the defendant intended to benefit end-users of its products, like the plaintiffs, when it sold and warranted the seeds to the independent dealer, and consequently, that the plaintiffs, as third party beneficiaries, could recover on a breach of contract theory premised on the express warranty between the defendant and the independent dealer. *Id*. at 925.

*Harris Moran* established that under Alabama law, a plaintiff need not prove privity of contract to succeed on a breach of express warranty claim. Instead, a plaintiff, as a third party beneficiary, can recover for the breach of an express warranty by showing that the original contracting parties intended for the

warranty to benefit the third party beneficiary. *Id*. Consequently, Lumber One's argument that is premised on a lack of privity fails.

### 3. Insufficiently pleaded third party beneficiary claim.

Finally, although it does not expressly concede its argument concerning privity, Lumber One contends that the court should dismiss Lisk's express warranty claim because it is insufficiently pleaded. Citing *Harris Moran*, Lumber One argues Lisk's complaint fails to adequately allege that Lumber One intended end users like Lisk to benefit from its warranty with Capitol Wholesale. Doc. 12 at 8. Lumber One notes that in *Harris Moran*, the plaintiffs supported their claims with a written statement from the defendant to the independent dealer "containing an express warranty referencing 'buyer,' 'end-user,' [and] 'consumer.'" *Id*. In contrast, Lumber One argues that the only fact Lisk asserts in support of his express warranty claim is that Lumber One stated on its website that its lumber was MCA pressure-treated lumber. *Id.*

Lisk counters by arguing *Harris Moran* did not establish a requirement that a plaintiff pursuing a third party breach of warranty claim allege the specific terms of that warranty at the pleading stage. Doc. 18 at 6. Lisk contends that such "an impossible pleading standard . . . would eviscerate 'third party beneficiary' claims because it would require a Plaintiff to allege the actual terms of a written

agreement to which he was not a party . . . prior to conducting discovery to obtain that agreement." *Id*. at 6 n. 3. Instead, Lisk maintains that the warranty terms presented to the court in *Harris Moran* were simply part of the "substantial evidence indicating that when [the seed manufacturer] sold and warranted the seeds to [the independent dealer] it intended to benefit future customers of [the dealer] and other end users." *Id.* at 6 (quoting *Harris Moran*, 949 So. 2d at 925). Additionally, Lisk argues that because Lumber One sold wood to distributors that was "labeled for resale as treated lumber," Lumber One and Capitol Wholesale "had end users like [Lisk] in mind when they reached their agreement." *Id.* at 7 (quoting *Harris Moran*, 949 So. 2d at 924).

    In principle, Lisk is correct that the warranty terms relied on by the *Harris Moran* plaintiffs were merely evidence supporting their assertion that the original parties to the contract contemplated its express warranty provisions would benefit end users such as themselves. Theoretically, at least, the *Harris Moran* plaintiffs could have met their burden with some other sort of evidence. Lumber One's argument, however, points to a flaw in Lisk's pleadings: he fails to allege a single fact supporting a finding that Lumber One and Capitol Wholesale intended an express warranty created by Lumber One's description of its product to benefit end users such as Lisk. Instead, the complaint merely recites the elements of a

third party beneficiary claim. *See* doc. 1 at 6–7; *see also Harris Moran*, 949 So. 2d at 920 (listing required elements of a third party beneficiary claim). Such a recitation is insufficient to survive a 12(b)(6) motion to dismiss. *See Bell Atl. Corp.*, 550 U.S. at 555 (noting that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 681 (finding pleadings "that amount to nothing more than a formulaic recitation of the elements of a . . . claim . . . are conclusory and not entitled to be assumed true") (internal quotation marks omitted); *Franklin v. Curry*, No. 13-10129, 2013 WL 6728101, at *3 (11th Cir. Dec. 23, 2013) (noting that "[m]ere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement'") (quoting *Iqbal*, 556 U.S. at 678).

The court agrees with Lisk that his allegations that Lumber One sold wood labeled for resale could indicate that Lumber One and Capitol Wholesale contemplated the existence of parties to that resale, such as Clean Cut and himself, when they contracted. But *Harris Moran* requires more than contemplation of end users. It requires that the original contracting parties "inten[d] to protect and

benefit the end users." 949 So. 2d at 925. The mere fact that Lumber One's wood was labeled for resale does not give rise to any subsequent inferences about Lumber One's intentions toward future purchasers. Similarly, the court agrees with Lisk that requiring a plaintiff to allege facts about an agreement to which it was not a party sets a high bar for a putative third party beneficiary. But, as the Supreme Court noted in *Iqbal*, "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 556 U.S. at 678–79; *see also Franklin*, 2013 WL 672801, at *4 n. 6 (rejecting the argument that the plaintiff's "lack of knowledge should relax the pleading standard to which she is held" and noting that "'[w]hile this may mean that a civil plaintiff must do more detective work in advance, the reason is to protect society from the costs of highly unpromising litigation'") (quoting *DM Research, Inc. V. Coll. Of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)).

For the reasons stated above, Lisk's breach of express warranty claim is insufficiently pleaded. Consequently, it is due to be and is **DISMISSED**.

### B. Lisk's Claim under the Alabama Deceptive Trade Practices Act

Lumber One argues that Lisk cannot bring a class action based on a claim

arising under the ADTPA.[4] Doc. 12 at 9–10. Lisk disagrees and contends that,

pursuant to the Supreme Court's decision in *Shady Grove Orthopedic Associates,*

*P.A., v. Allstate Insurance Co.*, 559 U.S. 393 (2010), this provision of the ADPTA

is preempted by Federal Rules of Civil Procedure 23 (Rule 23). Doc. 18 at 14.

In *Shady Grove*, a majority of five justices found that a New York law

prohibiting class actions in suits seeking penalties or statutory minimum damages

conflicted with Rule 23. 559 U.S. at 399. Therefore, a federal court sitting in

diversity could only apply the New York law if Rule 23 was not authorized by the

Rules Enabling Act and was consequently ultra vires. *Id.* at 406. A plurality of

four justices found that Rule 23 always falls within the authorization of the Rules

Enabling Act. *Id.* at 408 (Scalia, J., plurality opinion). But, in a controlling

concurrence,[5] Justice Stevens posited that, "[a] federal rule . . . cannot govern a

---

[4] The ADTPA provides that:

> [a] consumer or other person bringing an action under this chapter may not bring an action on behalf of a class; provided, however, that the office of the Attorney General or district attorney shall have the authority to bring action in a representative capacity on behalf of any named person or persons.

Ala. Code § 8-19-10(f).

[5] "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15 (1976)). "The 'narrowest grounds' is understood as the 'less far-reaching common ground.'" *United States v. Robison*, 505 F.3d 1208, 1221 (11th Cir. 2007) (quoting *Johnson v. Bd. of Regents*, 263

particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423 (Stevens, J., concurring). The application of a federal rule in such circumstances, Justice Stevens reasons, would violate the Rules Enabling Act's requirement "that federal rules 'not abridge, enlarge, or modify *any* substantive right.'" *Id.* at 422 (Stevens, J., concurring) (emphasis in original) (quoting 28 U.S.C. § 2072(b)). Justice Stevens went on to conclude that the New York law in question was purely procedural, and therefore the application of Rule 23 would not alter a state-created substantive right. *Id.* at 432 (Stevens J., concurring). In reaching his conclusion, Justice Stevens noted that the New York law at issue "expressly and unambiguously applies not only to claims based on New York law but also to claims based on federal law or the law of any other State," *id.* (Stevens, J., concurring), and that its legislative history did not clearly indicate it was enacted

---

F.3d 1234, 1247 (11th Cir. 2001). In *Shady Grove*, both the plurality and Justice Stevens concluded that Rule 23 preempted the New York Law at issue. *See Shady Grove*, 559 U.S. at 408 (Scalia J., plurality opinion); *id.* at 436 (Stevens J., concurring). But, "[b]ecause Justice Stevens' concurring opinion would permit some state law provisions addressing class actions—whereas [the plurality opinion] would broadly prohibit any state law that conflicted with Rule 23— Justice Stevens' opinion is the narrowest and, thus, controlling opinion." *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 747 (N.D. Ohio 2010). The majority of courts attempting to apply *Shady Grove* likewise have concluded that Justice Stevens' concurrence controls. *See, e.g.*, *Leonard v. Abbott Labs.*, No. 10-cv-4676 (ADS) (WDW), 2012 WL 764199, at *12 (E.D.N.Y. Mar. 5, 2012) (collecting cases).

to limit access to New York's statutory penalties, *id.* at 436 (Stevens, J., concurring).

Since the Supreme Court decided *Shady Grove*, a number of district courts have considered cases that roughly raised the same question this court now faces: does *Shady Grove* require a federal court sitting in diversity to apply Rule 23 rather than a state law that either explicitly or effectively limits a plaintiff's ability to bring a class action? Generally, these courts have concluded that if the limiting provision is found within the text of a state statute that confers a substantive right and applies only to cases brought under the statute, it is so intertwined with a state's substantive remedies that applying Rule 23 in its stead would abridge, enlarge, or modify a substantive state-created right, and consequently violate the Rules Enabling Act. *See In re Nexium (Esomeprazole) Antitrust Litig.*, Civil Action No. 12-md-02409-WGY, 2013 WL 4832176, at *28, *30 (D. Mass. Sept. 11, 2013) (finding that a provision of the Illinois Antitrust Act (IAA) requiring indirect purchaser suits to be brought by the Illinois Attorney General and a provision of the Utah Antitrust Act requiring residency to sue under the Act were not preempted by Rule 23); *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *18 (E.D.N.Y. Aug. 29, 2013) (finding a provision of New York's General Business law limiting its application

to conduct occurring within New York not preempted by Rule 23); *Phillips v. Phillip Morris Cos., Inc.*, 290 F.R.D. 476, 481 (N.D. Ohio, 2013) (finding a provision of the Ohio Consumer Sales Practice Act (OCSPA) prohibiting class actions unless defendants were on constructive notice that their alleged behavior was deceptive not preempted by Rule 23); *Williams v. Chesapeake La., Inc.*, Civil Action No. 10-1906, 2013 WL 951251, at *5 (W.D. La. Mar. 11, 2013) (finding a notice provision of Louisiana's Mineral Code Articles that effectively barred class actions for the underpayment of mineral royalties not preempted by Rule 23); *Leonard v. Abbott Labs., Inc.*, No. 10-cv-4676 (ADS) (WDW), 2012 WL 764199, at *13 (E.D.N.Y. Mar. 5, 2012) (finding OCSPA class action limitation not preempted by Rule 23); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 416 (S.D.N.Y. 2011) (finding IAA indirect purchaser requirement not preempted by Rule 23); *Tait v. BSH Home Appliances Corp.*, No. SACV 10-711 DOC (ANx), 2011 WL 1832941, at *9 (C.D. Cal. May 12, 2011) (finding provision of the Tennessee Consumer Protection Act (TCPA) barring plaintiffs from bringing class actions under the act not preempted by Rule 23); *Kline v. Mortg. Elec. Sec. Sys.*, No. 3:08cv408, 2010 WL 6298271 (S.D. Ohio, Dec. 30, 2010) (finding OCSPA class action limitation not preempted by Rule 23); *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 678 (E.D. Pa. 2010) (finding IAA indirect purchaser

17

requirement not preempted by Rule 23); *McKinney v. Bayer Corp.* 744 F. Supp. 2d 733, 748–49 (N.D. Ohio, 2010) (finding OCSPA class action limitation not preempted by Rule 23); *Bearden v. Honeywell Intern., Inc.*, No. 3:09-1035, 2010 WL 3239285, at \*8–\*10 (M.D. Tenn. Aug. 16, 2010) (finding TCPA class action limitations not preempted by Rule 23); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2010 WL 2756947 (N.D. Ohio, July 12, 2010)(finding OCSPA class action limitation not preempted by Rule 23) (*vacated on other grounds sub nom Whirlpool Corp. v. Glazer*, 133 S. Ct. 1722 (2013)).

The ADTPA's bar on private class actions is precisely the type of provision described in the above cases. It is contained in the same section of the Alabama Code that creates a private right of action under the ADPTA, *see* Ala. Code § 8-19-10, and its text limits its application to private rights of action brought under the ADPTA, *see* § 8-19-10(f) (stating that "[a] consumer or other person bringing an action *under this chapter* may not bring an action on behalf of a class") (emphasis added). Consequently, it defines the scope of a state-created right or remedy. Applying Rule 23 in its stead would modify that remedy and therefore violate the Rules Enabling Act.

In arguing to the contrary, Lisk relies heavily on the Alabama Supreme

Court's decision in *Ex parte Exxon Corp*. In that case, the court decertified a nationwide class action proceeding in Alabama courts under New Jersey's consumer protection laws. *Ex parte Exxon Corp.*, 725 So. 2d 930, 930, 932 (Ala. 1998). Lisk ostensibly argues that the *Exxon* court applied the ADTPA's bar on private class actions to the plaintiffs' class action brought under New Jersey law, and that consequently, the "ADTPA's bar on class actions is separate and distinct from an individual's rights or cause of action created by the ADTPA." Doc. 18 at 14. However, the *Exxon* court did not apply the ADTPA's bar on private class actions to New Jersey law. Instead, the *Exxon* court recognized that Alabama public policy, as embodied in the ADTPA's bar on private class actions, "does not allow consumers to bring class actions based on deceptive trade practices." *Exxon*, 725 So. 2d at 933. As the *Exxon* court recognized, Alabama courts will not apply the laws of another state if they are contrary to public policy. *Id.* (citing *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 507 (Ala. 1991) (stating that "where application of [another] state's laws would be contrary to Alabama policy, the parties' choice of law will not be given effect and Alabama law will govern"). Consequently, the court did not decertify the class by applying the ADPTA's bar on private class actions *to* New Jersey law; it decertified the class because applying New Jersey law to the claim would violate Alabama's public policy, and

19

case law dictated that the proper course of action under the circumstances was to apply Alabama law *instead* of New Jersey law. Therefore, contrary to Lisk's claims, *Exxon* does not stand for the notion that the ADTPA's bar on private class actions is separate and distinct from the substantive rights created by the statute.

Lisk also contends "the ADTPA's prohibition of private class actions is merely a 'procedural rule[] adopted for *some* policy reason' of the exact kind that Justice Stevens found must yield to Rule 23 in federal court." Doc. 18 at 13. This argument ignores both the Court's reasoning in *Shady Grove* and the unambiguous intent of the Alabama legislature. Justice Stevens referred to "procedural rules adopted for *some* policy reason," in the context of his observation that the legislative intent behind the law at issue in *Shady Grove* was unclear. *Shady Grove*, 559 U.S. at 433 (Stevens, J., concurring) (noting that "the legislative history, moreover, does not clearly describe a judgment that [the law at issue] would operate as a limitation on New York's statutory damages"). Moreover, Justice Stevens seems to indicate that were it clearer that the New York legislature enacted the law at issue in *Shady Grove* to limit the state's damages remedy, i.e. a substantive right, applying Rule 23 *would* violate the Rules Enabling Act. *Id.* at 436. In the present case, the Alabama Code clearly states that the legislative intent behind the ADTPA is to "protect the interest of both the consuming public and the

legitimate businessperson." Ala. Code § 8-19-2. The ADTPA's class action bar effectuates this intent by protecting legitimate business owners from potentially spurious class actions brought by consumers while still providing consumers with recourse to a class action suit, as long as it is brought by the Alabama Attorney General or a district attorney. In other words, the legislative intent is served through the limitation the bar places on a state-created substantive right. It is therefore not, as Lisk argues, "a procedural rule adopted for some policy reason."

For the reasons stated above, the ADTPA's bar on private class actions is not preempted by Rule 23. Consequently, Lisk may not maintain a class action based on his claim brought under the ADPTA. His class action claim is due to be, and is, **DISMISSED**.

### C. Subject Matter Jurisdiction

Lisk originally invoked this court's jurisdiction under the Class Action Fairness Act of 2005. Doc. 1 at 2. Now that his sole remaining claim is his individual action under the ADPTA, however, Lisk can continue to pursue his claim in federal court only if he meets the diversity jurisdiction requirements set forth in 28 U.S.C. § 1332. There is diversity of citizenship between the parties, as Lisk is a resident of Tennessee, and Lumber One is incorporated and has its principal place of business in Alabama. *Id.* at 1. But, the court maintains serious

21

doubts as to whether Lisk can satisfy 28 U.S.C. §1332(a)'s $75,000 minimum amount in controversy requirement, in part, because the ADPTA limits a plaintiff's recovery to up to three times any actual damages. Ala. Code § 8-19-10(a). Moreover, a plaintiff may only recover attorney's fees in a suit to enforce liability under the Act or in a suit to obtain injunctive relief. Ala. Code § 8-19-10(a)(3). In his complaint, Lisk alleges actual damages of $3,248.16—the cost of "replac[ing] the fence at the same cost" he initially paid for it. *See* doc. 1 at 2–3. Even if Lisk is entitled to three times this amount, to satisfy the amount in controversy requirement and maintain his action in federal court, he must demonstrate that he is entitled to more than $65,000 in attorney's fees. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC.*, 329 F.3d 805, 807 (11th Cir. 2003) (stating that "where jurisdiction is based on a claim for indeterminate damages, . . . the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum") (citations omitted) (internal quotation marks omitted). Therefore, the court **ORDERS** Lisk to show cause by January 30, 2014 that his claim meets 28 U.S.C. § 1332's minimum amount in controversy, or it will be dismissed without prejudice for want of jurisdiction.

### IV. CONCLUSION

For the reasons stated above, Lisk's express warranty claim is due to be

**DISMISSED** because it is insufficiently pleaded, and his ADTPA class claim is

**DISMISSED** because the ADTPA, by its own terms, does not allow individuals to

mount class actions for its violation. Lisk may proceed in his individual ADTPA

claim, but only if he is able to demonstrate that his claim meets 28 U.S.C. § 1332's

minimum amount in controversy requirement.

**DONE** this 8th day of January, 2014.



**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE